No. 62,078

CHARLES DOLLISON, *Appellee,* v. OSBORNE COUNTY, KANSAS, *Appellant.*
(763 P.2d 1101)

Opinion filed October 28, 1988.

*Vernon L. Steerman,* county attorney, argued the cause and was on the brief for appellant.

*Jerry L. Harrison,* of Noah & Harrison, P.A., of Beloit, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: This is the second time this case has come before the Supreme Court for review. In April 1985, the plaintiff, a former undersheriff of Osborne County, filed this action against the county, seeking compensation for overtime work pursuant to the provisions of the Kansas Minimum Wage and Maximum Hours Law (KMWMHL), K.S.A. 44-1201 *et seq.* The district court rejected plaintiff's claim, finding that he was excluded from the provisions of the KMWMHL. Plaintiff appealed, and, in *Dollison v. Osborne County,* 241 Kan. 374, 737 P.2d 43 (1987) *(Dollison I),* we reversed the district court and held that the exemptions from overtime pay stated in the federal Fair Labor Standards Act (FLSA), but not included in the KMWMHL, were unique to the federal law and could not serve as a basis for excluding an employee from the overtime provisions of the state statute. We found that only the administrative employee exemption contained in K.S.A. 44-1202(e)(3) could exclude an employee from both the FLSA and the KMWMHL. 241 Kan. at 384. We remanded the case to the district court for determination of whether the plaintiff was an administrative employee and therefore excluded from the provisions of the KMWMHL.

Upon remand, the district court concluded that plaintiff was

not an administrative employee and, therefore, was not excluded from the overtime pay provisions of the KMWMHL. In a memorandum decision dated October 5, 1987, the district court summarized its findings:

"While employed by the Osborne County Sheriff's Department, Mr. Dollison's official title was Undersheriff. The Sheriff's Department in Osborne County, being a small county in central Kansas, consisted of the Sheriff, Undersheriff, Deputy Sheriff, and sufficient dispatchers to man the dispatch office twenty-four (24) hours a day. There was only one other road deputy besides the Undersheriff and Sheriff.

"The evidence and exhibits clearly show that Mr. Dollison spent the majority of his time functioning as a Deputy Sheriff patrolling on the roads of Osborne County. He spent less than ten (10) percent of his time actually involved as an administrator.

"An administrator, while not defined by Kansas Statutes, is clearly set forth in Black's Law Dictionary: 'A manager or conductor of affairs, specifically the affairs of another in his name or on his behalf. A manager of public affairs on behalf of others.' Being a manager constitutes an individual who organizes, sets out, and directs the activities of another.

"That was not the function of Charles Dollison in Osborne County. He primarily operated as a road deputy. It is clear then, that he was within the purviews of coverage for the law enforcement officers as provided for in K.S.A. 44-1204(b).

"The primary bulk of Mr. Dollison's activities was patrolling the road, checking traffic, writing accident reports, and investigating crimes, none of which constitutes administrator's work."

Defendant Osborne County now appeals from the decision of the district court. The facts in this case are set out in *Dollison I*, and will be restated herein only as necessary to determine the present appeal.

The primary issue raised by the defendant in this appeal is whether the plaintiff was an administrative employee. The defendant, Osborne County, disputes the district court's conclusion that the plaintiff fell within the overtime pay protections of the KMWMHL. The defendant argues that the plaintiff was an administrative employee and is therefore excluded from the provisions of the overtime pay statute. K.S.A. 44-1202(e)(3) excludes from the provisions of the KMWMHL "any individual employed in a bona fide executive, administrative or professional capacity or in the capacity of an outside commission paid salesman, as such terms are defined and delimited by regulations of the secretary."

"Administrative capacity" has been defined by regulations

adopted by the secreary of human resources. K.A.R. 49-30-1(j) provides:

" 'Administrative capacity' means an individual employed in an administrative position, public or otherwise, when performance is of office or nonmanual work directly related to office management policies, or general business operations when: (1) such individual supervises at least two (2) other employees; and (2) does not devote more than twenty (20) percent (forty (40) percent in case of employees in retail or service establishments), of his or her hours of work in a workweek to employment activities which are included in the coverage of these regulations; (3) performs functions in the administration of a school system, educational establishment or institution, where the work is directly related to academic instruction or training; (4) an individual who exercises discretion and independent judgment regularly and directly to assist a bona fide executive or administrative person as herein defined, and is subject to the same qualifying requirements."

Of particular relevance in the present case is subsection (j)(2) of this regulation, which excludes persons devoting more than 20% of their time during the workweek to employment activities covered by the regulations. If more than 20% of an individual's time is devoted to manual or nonoffice work, the individual is not employed in an administrative capacity and, therefore, remains within the protections afforded by the KMWMHL. In the present case, the district court found that the plaintiff devoted over 90% of his time to manual or nonoffice work, and that he spent less than 10% of his time "actually involved as an administrator."

The defendant argues that subsection (j)(2) of K.A.R. 49-30-1 should not be applied "inflexibly," and offers two rationales for disregarding its application in the present case. First, the defendant repeatedly stresses that, throughout his period of employment, it paid the plaintiff an average wage approximately three times the $1.60 per hour minimum wage required by K.S.A. 44-1203(a). We note, however, that the KMWMHL contains independent provisions regarding both the minimum wage and overtime compensation. Nothing in the statute suggests that an employer, by satisfying the requirements for the payment of a minimum wage, is excused thereby from the requirements for the payment of overtime compensation.

Second, the defendant suggests that the plaintiff is excluded from the provisions of the KMWMHL because he was not an employee of the defendant. K.S.A. 44-1202(c) states: "'Employ' means to suffer or permit to work." The defendant argues that it did not suffer or permit the plaintiff to work overtime, citing a

pre-employment agreement with the plaintiff that he would not collect overtime pay.

We find no merit in the defendant's argument. As the defendant concedes, K.S.A. 44-1211(a) expressly provides that an employee's agreement to work for less than the applicable wage rate shall not be a defense to a subsequent action by the employee to recover his appropriate wages and overtime compensation. By any reasonable analysis, defendant Osborne County did suffer or permit the plaintiff to work as an undersheriff, and therefore is considered to have employed him in that capacity.

Finally, the defendant argues that the plaintiff should be considered an administrative employee, since he performed some office or nonmanual work and his base salary exceeded $250 per week. The defendant's argument relies upon 29 C.F.R. § 541.2 (1987), which defines the term "administrative employee" as it is used in the FLSA:

"The term 'employee employed in a bona fide . . . administrative . . . capacity' in section 13(a)(1) of the Act shall mean any employee:

"(a) Whose primary duty consists of either:

"(1) The performance of office or nonmanual work directly related to' management policies or general business operations of his employer or his employer's customers, or

"(2) The performance of functions in the administration of a school system, or educational establishment or institution, or of a department or subdivision thereof, in work directly related to the academic instruction or training carried on therein; and

"(b) Who customarily and regularly exercises discretion and independent judgment; and

"(c)(1) Who regularly and directly assists a proprietor, or an employee employed in a bona fide executive or administrative capacity (as such terms are defined in the regulations of this subpart), or

"(2) Who performs under only general supervision work along specialized or technical lines requiring special training, experience, or knowledge, or

"(3) Who executes under only general supervision special assignments and tasks; and

"(d) Who does not devote more than 20 percent, or, in the case of an employee of a retail or service establishment who does not devote as much as 40 percent, of his hours worked in the workweek to activities which are not directly and closely related to the performance of the work described in paragraphs (a) through (c) of this section; and

"(e)(1) Who is compensated for his services on a salary or fee basis at a rate of not less than $155 per week ($130 per week, if employed by other than the Federal Government in Puerto Rico, the Virgin Islands, or American Samoa), exclusive of board, lodging, or other facilities, or

"(2) Who, in the case of academic administrative personnel, is compensated for

services as required by paragraph (e)(1) of this section, or on a salary basis which is at least equal to the entrance salary for teachers in the school system, educational establishment, or institution by which employed: *Provided*, That an employee who is compensated on a salary or fee basis at a rate of not less than $250 per week ($200 per week if employed by other than the Federal Government in Puerto Rico, the Virgin Islands, or American Samoa), exclusive of board, lodging, or other facilities, and whose primary duty consists of the performance of work described in paragraph (a) of this section, which includes work requiring the exercise of discretion and independent judgment, shall be deemed to meet all the requirements of this section."

Under the federal regulation, an employee who does not customarily and regularly exercise discretion and independent judgment, or who devotes more than 20% of his time during a workweek to manual or nonoffice work, is not considered an employee employed in a bona fide administrative capacity. 29 C.F.R. § 541.2(b) and (d). However, subsection (e)(2) contains a superseding provision which states that such individuals are nonetheless to be considered administrative employees so long as they receive a base salary of $250 or more per week and their primary duties consist of the performance of office or nonmanual work, including *some* work requiring the exercise of discretion and independent judgment. *Dymond v. United States Postal Service*, 670 F.2d 93 (8th Cir. 1982). Subsection (e)(2) of § 541.2 is "a special proviso including within the definition of 'administrative' an employee who is compensated on a salary or fee basis at a rate of not less than $250 per week exclusive of board, lodging, or other facilities," and whose primary duty consists of the performance of office or nonmanual work. 29 C.F.R. § 541.214(a). "Such a highly paid employee having such work as his or her primary duty is deemed to meet all the requirements in § 541.2(a) through (e). If an employee qualifies for exemption under this proviso, it is not necessary to test the employee's qualifications in detail under § 541.2(a) through (e)." 29 C.F.R. § 541.214(a).

The defendant contends that, since the plaintiff was paid a base salary in excess of $250 per week, under this special proviso he should be considered an administrative employee even though he devoted more than 20% of his time to manual or nonoffice work. We do not agree. The special proviso contained within 29 C.F.R. § 541.2(e)(2) is an expansive definition of the term "administrative employee" as it is used in the federal FLSA. As we noted in *Dollison I*, the plaintiff's action is not

grounded upon the federal law, but is instead based upon the KMWMHL. Our decision in *Dollison I* clearly limited the issue to the interpretation of Kansas law; the regulations adopted by the secretary of human resources defining administrative employees contain no provision comparable to the special proviso in the federal rules.

This court has recognized that, in construing a statute, "the interpretation placed upon it by an administrative agency whose duties are to carry the legislative policy into effect, should be given great weight." *Cities Service Gas Co. v. State Corporation Commission*, 192 Kan. 707, 714, 391 P.2d 74 (1964). In the present case, even greater weight must be accorded the secretary's definition of an individual employed in a bona fide "administrative capacity," since the statute being construed expressly incorporates the secretary's definition. K.S.A. 44-1202(e) provides that an employee "means any individual employed by an employer, but shall not include: . . . (3) any individual employed in a bona fide executive, administrative or professional capacity or in the capacity of an outside commission paid salesman, *as such terms are defined and delimited by regulations of the secretary [of human resources].*" Thus, in interpreting the scope of the KMWMHL, this court must look to the regulations adopted by the secretary of human resources rather than the federal regulations adopted by the Department of Labor in implementing the FLSA.

Since K.A.R. 49-30-1(j) contains no provision similar to the special proviso for highly paid employees contained in 29 C.F.R. § 541.2(e)(2), the defendant's argument must be rejected. As noted earlier, the state regulation excludes from consideration as an administrative employee a person devoting more than 20% of his time to manual or nonoffice work. The district court, finding that the plaintiff devoted less than 10% of his time to administrative activities, correctly concluded that the plaintiff could not be considered an individual employed in a bona fide administrative capacity and was not excluded from the protections of the KMWMHL.

Defendant county next takes issue with the amount of attorney fees awarded by the district court. The defendant concedes that the district court is authorized to award attorney fees pursuant to K.S.A. 44-1211(a), which provides for "costs and such reasonable

attorney fees as may be allowed by the court in an action for the recovery of such wages and overtime compensation." The defendant, however, contends that the district court's award of $6,072.21 in attorney fees was unreasonable.

In support of its contention, the defendant offers two arguments. First, the defendant contends that the award of attorney fees of $6,072.21 is unreasonable in light of the $12,133.90 judgment for the plaintiff. The defendant contends that an award of attorney fees in excess of one-half of the judgment recovered "is prima facie unreasonable." The defendant, however, fails to cite any. authority in support of its contention.

Second, the defendant contends that the trial court erred in accepting a post-trial request by the plaintiff for an increase of $435.50 in the amount of attorney fees to be awarded. On January 22, 1986, the plaintiff's attorney filed a statement of attorney fees, listing as total fees and expenses $2,275.57. Included within this amount is a statement for 32.4 hours of pretrial work between January 17, 1985, and January 22, 1986.

On October 9, 1987, the attorney for the plaintiff filed a motion for additional attorney fees. A statement for services accompanying the motion lists total fees and expenses between January 17, 1985, and January 22, 1986, of $2,711.07. The increase reflects an additional 6.7 hours at $65 per hour, or $435.50. On December 18, 1987, the district court made a final award of attorney fees to the plaintiff in the total amount of $6,072.21, which included the additional 6.7 hours sought by the plaintiff in the October 9 motion. The defendant contends that the award of attorney fees would be reasonable only if reduced by the sum of $435.50.

When the district court follows established guidelines for determining the size of an attorney fee award, appellate review is limited to abuse of discretion. *Allison v. Board of Johnson County Comm'rs*, 241 Kan. 266, 279, 737 P.2d 6 (1987). The supplemental statement of services filed by the plaintiff for which recovery was sought was as detailed as the original statement of fees and was, in essence, a correction of the original estimate of attorney fees. The defendant fails to demonstrate that the district court abused its discretion in permitting the plaintiff to supplement his original statement of attorney fees.

The judgment of the trial court is affirmed.