**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ROBERT NIGG; KEITH LEWIS, as
private attorney generals and on
behalf of themselves and all others
similarly situated,
            *Plaintiffs-Appellants,*

            and

GINA HARRELL,

                        *Plaintiff,*

            v.

UNITED STATES POSTAL SERVICE,
            *Defendant-Appellee.*

No. 05-55650

D.C. No.
CV-03-01611-GLT

ORDER AND
OPINION

Appeal from the United States District Court
for the Central District of California
Gary L. Taylor, District Judge, Presiding

Argued and Submitted
April 9, 2007—Pasadena, California

Filed February 4, 2009

Before: Betty B. Fletcher and M. Margaret McKeown,
Circuit Judges, and Ronald M. Whyte,* District Judge.

Opinion by Judge McKeown

---

*The Honorable Ronald M. Whyte, United States District Judge for the
Northern District of California, sitting by designation.

**COUNSEL**

Daniel A. Osborn, Beatie & Osborn, LLP, New York, New York, for the appellants.

Leon W. Weidman and Jason K. Axe, Assistant United States Attorneys, Los Angeles, California, for the appellee.

**ORDER**

The petition for panel rehearing is granted in part. The opinion filed August 27, 2007, and appearing at 501 F.3d 1071, is withdrawn. It may not be cited as precedent by or to this court or any district court of the Ninth Circuit. A new opinion is filed contemporaneously.

**OPINION**

McKEOWN, Circuit Judge:

This appeal principally involves the relationship between two labor statutes—the Fair Labor Standards Act of 1938 and a 1996 statute related to compensation for postal inspectors, 39 U.S.C. § 1003(c). Robert Nigg, a postal inspector[1] currently employed by the United States Postal Service ("the

---

[1]In general, postal inspectors undertake criminal, civil and administrative investigations involving the postal laws. *See Sprague v. United States*, 677 F.2d 865 (Cl. Ct. 1982) (explaining postal inspectors' job duties).

Postal Service") and Keith Lewis, a retired postal inspector, sued the Postal Service alleging that the inspectors are entitled to overtime pay under the Fair Labor Standards Act ("FLSA" or "the Act"), 29 U.S.C. §§ 201-219. The Postal Service does not pay postal inspectors FLSA overtime, instead claiming that their pay is governed by 39 U.S.C. § 1003(c). At issue is whether the compensation provision in § 1003(c) trumps the overtime provisions of the FLSA.

The district court granted summary judgment in favor of the Postal Service, reasoning that 39 U.S.C. § 1003(c), which requires the Postal Service to pay the inspectors on a basis of "comparability" to other similarly tasked executive branch employees, permits the Postal Service to provide "availability pay" rather than FLSA overtime. The court adopted the Postal Service's argument that postal inspectors are comparable to certain other federal law enforcement officers who receive availability pay under the Law Enforcement Availability Pay Act, Pub. L. No. 103-329 § 633, 108 Stat. 2382 (1994).

FLSA overtime and availability pay differ significantly, both in terms of the hours of work required to qualify, and the way in which pay is calculated. For example, FLSA overtime entitles a covered employee to overtime pay for all hours worked in excess of 40 hours per week. *See* 29 U.S.C. § 207(a)(1). In contrast, availability pay requires a covered employee to work an average of two extra hours of overtime per day beyond the eight hour day for the entire year to be entitled to extra pay for the extra hours worked. *See, e.g.*, 5 U.S.C. § 5545a(a)-(d).

FLSA's overtime provisions presumptively apply to federal employees, such as the inspectors, unless a specific FLSA exemption applies. *See* 5 C.F.R. § 551.202(a) ("Each employee is presumed to be FLSA nonexempt unless the employing agency correctly determines that the employee clearly meets one or more of the exemption criteria[.]"). In enacting § 1003(c), Congress did not explicitly amend or

repeal the FLSA. However, whether these statutes implicitly conflict depends on whether any employees of the executive branch are both (1) engaged in work comparable to that of the postal inspectors, and (2) paid FLSA over-time. *See Moyle v. Dir., Office of Workers' Comp. Programs*, 147 F.3d 1116, 1120 (9th Cir. 1998) (" 'Repeals by implication . . . are not favored and will only be found when the new[er] statute is clearly repugnant, in words or purpose, to the old statute . . . .' ") (quoting *Kee Leasing Co. v. McGahan* (*In re Glacier Bay*), 944 F.2d 577, 581 (9th Cir. 1991)). We reverse the district court's grant of summary judgment to the Postal Service and remand with instructions to consider (1) whether any employees of the executive branch who are eligible to receive FLSA over-time perform work comparable to that of the inspectors, and (2) whether the inspectors satisfy any FLSA exemption or are entitled to FLSA overtime.

## ANALYSIS

### I. THE LEGISLATIVE LANDSCAPE

Because our decision rests on a series of labor statutes, principally the FLSA and 39 U.S.C. § 1003(c), we begin by briefly reviewing the relevant Congressional enactments and their implications for postal inspectors' pay.

### A. THE FAIR LABOR STANDARDS ACT—1938

[1] In 1938, Congress enacted the FLSA to improve "conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a). The FLSA requires most employers to pay "overtime" compensation to employees working more than forty hours per week "at a rate not less than one and one-half times the regular rate." *Id*. § 207(a)(1). In 1974, Congress amended the FLSA to include all federal, state, and local government employees, and in particular, individuals employed by the Postal Service. *See id*.

§ 203(e)(2)(B) (" '[E]mployee' means . . . any individual employed by the United States Postal Service . . . .").

The FLSA provides detailed exemptions excluding certain classes of employees from the Act's overtime pay requirements. *See id.* § 213. For example, § 213(a)(1) exempts "administrative" employees, a matter we address in more detail below. Section 213(b)(20) exempts federal law enforcement officers if the federal agency "employs during the workweek less than 5 employees . . . in law enforcement activities." *Id.* § 213(b)(20). According to the implementing regulations "in all exemption determinations," employees are "presumed to be FLSA nonexempt." 5 C.F.R. § 551.202.

## B.  FEDERAL LAW ENFORCEMENT PAY REFORM ACT—1990

In 1990, Congress passed the Federal Law Enforcement Pay Reform Act ("FLEPA") as part of the Federal Employees Pay Comparability Act of 1990. Under FLEPA, certain federal law enforcement officers are guaranteed overtime pay (referred to as "administratively uncontrollable overtime" or "AUO") among other pay protections. *See* 5 U.S.C. § 5305. At the request of the Postal Service, postal inspectors were not included in FLEPA. *See* Postal Inspection Service Compensation Task Force: Pay Comparability for Postal Inspectors Report, June 1991.

## C.  THE LAW ENFORCEMENT AVAILABILITY PAY ACT ("LEAP")—1994

In 1994, Congress enacted LEAP, codified at 5 U.S.C. § 5545a, amending FLEPA and ending administratively uncontrollable overtime for most federal law enforcement agents, though some federal agents still receive AUO pay. *See* Pub. L. No. 103-329 § 633, 108 Stat. 2382 (1994). LEAP requires that covered federal law enforcement officers, in addition to their regular work schedule, be available to work an average of two extra hours per day. 5 U.S.C.

§ 5545a(d)(1). If a law enforcement officer averages two extra hours of availability each work day for the whole year, then the officer is entitled to additional pay in the amount of 25% of the annual base pay. *See* 5 U.S.C. § 5545a(h).

Because postal inspectors were not included in FLEPA, they were not included in LEAP, which basically sought to revise the FLEPA pay regime. *See id.* § 2105(e) ("Except as otherwise provided by law, an employee of the United States Postal Service or of the Postal Rate Commission is deemed not an employee for purposes of this title."); *see also Nigg v. Merit Sys. Prot. Bd.*, 321 F.3d 1381, 1384 (Fed Cir. 2003). To protect federal agencies from having to pay law enforcement officers both LEAP and FLSA overtime, Congress amended the FLSA to exempt officers who received LEAP from receiving FLSA overtime. *See* 29 U.S.C. § 213(a)(16).

### D.  POSTAL INSPECTORS' COMPENSATION, 39 U.S.C. § 1003(c)—1996

**[2]** In 1996, Congress passed 39 U.S.C. § 1003(c) to raise the salaries and benefits paid to postal inspectors to correspond with the compensation for investigators from other federal agencies. Section 1003(c) provides:

> Compensation and benefits for all Postal Inspectors shall be maintained on a standard of comparability to the compensation and benefits paid for comparable levels of work in the executive branch of the Government outside the Postal Service. As used in this subsection, the term "Postal Inspector" included [sic] any agent to whom any investigative powers are granted under section 3061 of title 18.

Thus, the statute requires that compensation and benefits for postal inspectors be comparable to that paid to executive branch employees with comparable levels of work, but does not define more precisely how this comparability should be

determined. In enacting § 1003(c), Congress did not amend the FLSA to exempt overtime pay for postal inspectors as it did to exempt investigators receiving availability pay under LEAP.

## II.   THE PARTIES' POSITIONS

According to the Postal Service, § 1003(c) permits the Postal Service to pay the inspectors comparably to those federal law enforcement officers who receive availability pay and not FLSA overtime. The Postal Service claims that GS-1811 investigators in the executive branch perform comparable work to postal inspectors and are not paid FLSA overtime because they are exempt under LEAP, 5 U.S.C. § 5545(a), and the LEAP amendment to the FLSA, 29 U.S.C. § 213(a)(16). *But see Nigg,* 321 F.3d at 1384 ("The provisions of Title 5 do not apply to the Postal Service unless Congress has specifically so provided . . . . [LEAP] section 5545a is not one of the exceptional provisions that Congress has made applicable to the Postal Service.") (citations omitted).

The inspectors reject the Postal Service's interpretation of § 1003(c) because it fails to give full effect to both that statute and the FLSA's overtime provisions. The inspectors counter that the Postal Service could give effect to both statutes by paying the inspectors in a similar manner to comparably tasked executive branch investigators who receive FLSA overtime pay.

## III.   RECONCILING THE STATUTES

Both the FLSA and 39 U.S.C. § 1003 address the subject of pay for postal inspectors. As explained in the preceding section, the FLSA's overtime provisions apply to "any individual employed by the United States Postal Service" unless exempt. *See* 29 U.S.C. § 203(e)(2)(B). And Congress enacted § 1003(c) to ensure that the compensation and benefits for postal inspectors are "maintained on a standard of compara-

bility" to that "paid for comparable levels of work in the executive branch . . . outside of the Postal Service." The statutory text of the FLSA makes clear that postal inspectors are entitled to overtime pay unless they are subject to a specific enumerated exemption, and § 1003(c) is silent on what its pay comparability requirement entails with respect to overtime pay.

Hence, we have two statutes addressing compensation for postal inspectors and the question is whether they can be reconciled or whether one of them trumps the other. The Supreme Court has cautioned:

> The courts are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective.

*Morton v. Mancari*, 417 U.S. 535, 551 (1974).

The Postal Service's interpretation of § 1003(c)—a statute it is charged to administer—is entitled to deference under *Chevron U.S.A. v. Natural Resources Defense Council, Inc*, 467 U.S. 837 (1984), so long as it is reasonable. *See id.* at 842-43. Yet, since administration of the FLSA is not the special province of the Postal Service, the Postal Service's interpretation of the FLSA is not entitled to *Chevron* deference. *See Ass'n of Civilian Technicians v. Fed. Labor Relations Auth.*, 200 F.3d 590, 592 (9th Cir. 2000) ("Although courts owe *Chevron* deference to an agency's construction of a statute it is charged with administering, courts do not owe deference to an agency's interpretation of a statute it is not charged with administering or when an agency resolves a conflict between its statute and another statute.").

**[3]** If only § 1003(c) were at issue, the Postal Service's construction of the statute—that § 1003(c) empowers the

Postal Service to provide "availability pay" rather than FLSA overtime—would be permissible under *Chevron*.[2] However, the Postal Service's interpretation of § 1003(c) conflicts with the clear meaning of the FLSA, which guarantees overtime pay to non-exempt employees. Accordingly, the Postal Service's interpretation is reasonable only if the Postal Service can establish either that § 1003(c) repealed the application of FLSA's overtime provisions to the inspectors, or, that the inspectors are otherwise exempt from the FLSA. We address each possibility in turn.

## A.    REPEAL BY IMPLICATION

As is evident from a chronological review of the statutes, postal inspectors were not part of the legislative compensation reform for law enforcement officers in 1990 and 1994. For officers covered under the LEAP reform, Congress explicitly amended the FLSA to exempt those officers. *See* 29 U.S.C. § 213(a)(16).

---

[2]The postal inspectors argue that the Postal Service's "availability pay" system, while similar in some respects to the premium pay afforded by LEAP, is not the same as LEAP pay. The postal inspectors note the following inadequacies:

> [T]he Postal Service's "availability pay" system does not compensate postal inspectors for scheduled overtime as required under LEAP; it does not properly count available hours—i.e, [sic] when postal inspectors are required by the needs of the Postal Service to be generally and reasonably accessible beyond their normal workweek; and it is essentially mandatory overtime because a postal inspector who fails to meet the hourly requirement will be disciplined for failing to do so.

While these perceived shortcomings in the Postal Service's implementation of § 1003(c) may render the Postal Service's availability pay plan somewhat less attractive to the inspectors than LEAP, § 1003(c) does not require that the postal inspectors' pay and benefits be *absolutely identical* to that of a specific set of executive employees, only that they be comparable. Further, the question of whether the Postal Service has properly implemented the comparability requirements of § 1003(c) in relation to LEAP's pay and benefits is not before us in this appeal.

**[4]** In contrast to the express Congressional repeal of FLSA in LEAP, nothing in the text of § 1003(c) repeals any portion of the FLSA. Nor is there any amendment to the FLSA contemporaneous with or following the enactment of § 1003(c) that exempts postal inspectors from overtime pay under the FLSA. Repeals by implication are disfavored—"[t]he intention of the legislature to repeal 'must be clear and manifest.' " *Morton*, 417 U.S. at 551 (quoting *United States v. Borden*, 308 U.S. 188, 198 (1939)).

Because § 1003(c) does not reflect an intent to alter the FLSA's overtime provisions as applied to postal inspectors, any claim that § 1003(c) constitutes an implied repeal falls short of the "clear and manifest" requirement. Indeed, we have little, if any, evidence of congressional intent in enacting § 1003(c), apart from the plain language of the statute.

Section 1003(c) was passed as part of an omnibus appropriations bill for the Department of Defense for the fiscal year 1997. The bill, H.R. 3610, is more than 500 pages long, but the portion relating to postal inspector compensation takes up less than one page, and all provisions relating to the postal service span only five pages. Nothing in the legislative history conveys any particular view with respect to § 1003(c) and overtime pay, apart from a general interest in ensuring pay equity for postal inspectors.[3]

Significantly, we know from adoption of LEAP just two years earlier that Congress was not unaware of the FLSA in connection with law enforcement and postal inspector func-

---

[3]The House Conference Report explains that the more general provisions in the statute relating to the postal service created an independent Office of the Inspector General ("IG") for the Postal Service. *See* 142 Cong. Rec. H12051-02. In a deposition in this case of James K. Belz, a Postal Service executive in charge of budget issues, Belz testified he believed that with the creation of the IG office, longstanding pay inequities for postal inspectors had to be addressed or else the Postal Service inspectors would all seek to leave to go to the IG's office.

tions. In enacting § 1003(c), Congress could have followed the path it took in LEAP, amending the FLSA, but it did not.

The Postal Service argues that the Supreme Court's analysis in *Lorillard v. Pons*, 434 U.S. 575, 580-81 (1978), suggests that through § 1003(c) Congress intended to maintain the status quo of denying FLSA overtime to postal inspectors because when "Congress adopts a new law . . . [it] can be presumed to have had knowledge of the interpretation given to the incorporated law, at least insofar as it affects the new statute." *Id.* at 581. This argument lacks traction for two reasons. First, the presumption of Congressional awareness of existing interpretations of a given statute ordinarily applies to situations where Congress re-enacts the same statute. *See, e.g.*, *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 414 n.8 (1975). Second, as in *Lorillard*, where awareness of a different statutory scheme is presumed, sections of that other statute were incorporated in the statute in question; such is not the statutory scheme here. 434 U.S. at 580-81.

**[5]** Despite the lack of evidence of congressional intent in § 1003(c) to repeal the FLSA, there remain two well-settled and judicially-recognized categories of repeal by implication. One category entails situations in which the later act covers the entire subject of the earlier one and is plainly intended as a substitute. *See Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 154 (1976) (citing *Posadas v. Nat'l City Bank*, 296 U.S. 497, 503 (1936)); *In re Glacier Bay*, 944 F.2d at 581. Section 1003(c) is a very narrow provision that does not touch upon or overlap in any manner with the broad provisions of the FLSA. Section 1003, even viewed in its entirety, cannot be regarded as a substitute for the FLSA.

The second category of repeals by implication involves instances in which provisions of two acts are in irreconcilable conflict; in such case, the later act, to the extent of the conflict, constitutes an implied repeal of the earlier one. *See In re Glacier Bay*, 944 F.2d at 581. "Irreconcilable conflict will not

be found merely because two statutes compel different results in a particular case. Rather, there must be a repugnancy between the words or purposes of the two statutes." *Lujan-Armendariz v. I.N.S.*, 222 F.3d 728, 744 (9th Cir. 2000) (internal quotations and citations omitted).

**[6]** The FLSA's overtime provisions and § 1003(c) are not in irreconcilable conflict if there are employees of the executive branch who (1) perform work that is comparable to the work performed by the postal inspectors, and (2) are eligible for FLSA overtime. The inspectors argue that the Postal Service could have paid the inspectors the same over-time provided to Customs Officers, employees in the U.S. Secret Service Uniformed Division, and employees of the U.S. Park Police. However, the district court did not consider whether employees in these positions perform work that is comparable to that of the postal inspectors. Consequently, we reverse and remand to the district court for the determination of whether the postal inspectors perform work that is comparable to the work performed by any executive branch employee who receives FLSA over-time pay.

## B.  FLSA Exemption

The only other way the Postal Service could comply with both statutes and persist in its current application of § 1003(c) is if the Postal Service were to establish that the inspectors are not entitled to overtime pay under the FLSA. The Postal Service cannot rely on § 1003(c) as an implicit exemption of the inspectors from the FLSA. *See Citicorp Indust. Credit, Inc. v. Brock*, 483 U.S. 27, 35 (1987) ("[W]here the FLSA provides exemptions 'in detail and with particularity,' we have found this to preclude 'enlargement by implication.' ") (quoting *Addison v. Holly Hill Fruit Prods., Inc.*, 322 U.S. 607, 617 (1944)).

**[7]** Of the specific exemptions to the FLSA, the only one which postal inspectors potentially may satisfy is the adminis-

trative employee exemption, which exempts from overtime pay "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). The Postal Service thus argues in the alternative that the inspectors are administratively exempt, leaving the agency free to interpret 39 U.S.C. § 1003(c) without regard for the FLSA.

"Whether employees are exempt from the requirements of the [FLSA] is primarily a question of fact." *Hodgson v. The Klages Coal & Ice, Co.*, 435 F.2d 377, 382 (6th Cir. 1970) (citing *Walling v. Gene. Indust. Co.*, 330 U.S. 545, 550 (1947)). "The burden of proof rests with the agency that asserts the exemption." 5 C.F.R. § 551.202(c). "The criteria provided by the regulations are absolute and the employer must prove that any particular employee meets every requirement before the employee will be deprived of the protection of the Act." *Bratt v. County of Los Angeles*, 912 F.2d 1066, 1069 (9th Cir. 1990) (internal quotations and citation omitted).

Relying on a 1982 United States Court of Claims opinion, the Postal Service claims that postal inspectors are exempt administrative employees. *Sprague*, 677 F.2d at 868-69. That opinion, which references a 1976 Opinion Letter from the Department of Labor, reflects the intensely factual nature of an exemption determination:

> In 1976, the Postal Service sought a determination from the Wage and Hour Division, Department of Labor, whether postal inspectors were administrative employees within the meaning of 29 U.S.C. § 213(a)(1). The submissions accompanying that request detailed the specific information the Wage and Hour Division . . . had indicated it would need to decide the postal inspectors' status. . . . [T]he Wage and Hour Division concluded: "Based on our review of the information submitted-it is our view

that the Postal Inspectors, all of whom meet the . . . salary test . . . would qualify as exempt . . . employees under the special proviso for high salaried [administrative] employees . . . . Such employees appear to have as their primary duty the performance of work directly related to the general business operation of their employer, including the exercise of discretion and judgment."

*Id.* at 868 (quoting Letter from Ronald James, Administrator of the Wage and Hour Division, to C. Neil Benson, Chief Inspector, United States Postal Service (December 27, 1976)).

The inspectors argue that the duties associated with their position have changed fundamentally since 1976. According to the postal inspectors:

At the time of these decisions [e.g. *Sprague*], postal inspectors also performed "audit" functions. The Department of Labor's determination that postal inspectors were administrative employees was based, in large part, on the performance of these audit functions. As a result of the 1996 amendments to the Postal Reorganization Act, Congress created the Office of the Inspector General which took over the audit functions of postal inspectors, meaning that their primary job function became that of a law enforcement officer. Since law enforcement officers are not administrative employees, postal inspectors no longer fit within the administrative employee exemption.

In addition to being a factual question, "[t]he designation of an employee as FLSA exempt or nonexempt ultimately rests on the duties actually performed by the employee." 5 C.F.R. § 551.202(i).

Because the grant of summary judgment was premised on interpretation of § 1003(c), the district court did not address

the postal inspectors' status vis-a-vis the exemptions to the FLSA. In particular, the court did not analyze whether, given the changed circumstances that the inspectors allege, the inspectors *currently* fall within the FLSA's administrative exemption based on *duties actually performed*.

**[8]** We cannot properly determine for the first time on appeal whether there are executive branch employees who perform work comparable to that of the postal inspectors and who are paid FLSA over-time, and whether the inspectors are entitled to FLSA overtime or are administratively exempt. Thus, we reverse and remand to the district court to resolve these issues.

## IV. DISCOVERY DISPUTE

The inspectors also challenge a discovery order denying in part their motion to compel the production of documents from the Postal Service, but permitting the inspectors to file a less burdensome request. Given that the inspectors may tailor their request on remand to more precisely specify the documents they seek, the district court did not deprive the inspectors of relevant material altogether or clearly abuse its discretion. *See United States v. Kitsap Physicians Service*, 314 F.3d 995, 1000 (9th Cir. 2002) (stating that a district court's discovery ruling will not be overturned in the absence of a clear abuse of discretion) (internal quotations and citations omitted). In any event, this discovery issue is unrelated to the district court's legal analysis of the text of § 1003(c), the only basis for the court's summary judgment ruling. *See Home Indemnity Company v. Lane Powell Moss and Miller*, 43 F.3d 1322, 1327 (9th Cir. 1995) (citations omitted) (holding that discovery rulings are only reversible error if party appealing can show prejudice).

## CONCLUSION

We remand for a determination of whether there are executive branch employees who perform work comparable to that

of the postal inspectors and who are paid FLSA overtime, and whether the inspectors are entitled to FLSA overtime or are administratively exempt. We affirm on the challenge to the discovery order.

**AFFIRMED** in part; **REVERSED** in part and **REMANDED**. Costs on appeal are awarded to appellants.